IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEONARD LEE HALEY, #325-235              *

Plaintiff,                                *

               v.              *    Civil Action No. WMN-15-1346

SGT. JANET M. PUFFENBERGER           *
LT. BRADLEY A. WILT
OFFICER R. ROUNDS, CO II                 *
OFFICER KIEFER, CO II
DR. COLIN OTTEY                          *

Defendants.                               *
                             *****

## MEMORANDUM

On May 11, 2015, the Court received for filing Leonard Lee Haley's ("Haley"), self-represented 42 U.S.C. § 1983 civil rights action, dated May 5, 2015.  The Complaint seeks miscellaneous injunctive relief and money damages from four correctional officers and the Medical Director at the North Branch Correctional Institution ("NBCI").  Defendants Ottey, Kiefer, Puffenberger, and Wilt have filed unopposed Motions to Dismiss or, in the Alternative, Motions for Summary Judgment (ECF Nos. 13 & 18),[1] as well as legal memorandum (ECF Nos. 13-3 & 18-1)[2] (collectively, "Motions"), a Motion to Seal (ECF No. 14) and a number of exhibits consisting of hundreds of pages.[3]

Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on

---

[1]     Service of process was not effected on Officer R. Rounds.  ECF No. 7.  The Litigation Coordinator indicates that there is no Officer R. Rounds employed at NBCI.  *Id.*

[2]     All exhibits are referenced by their electronic filing number.

[3]     To illustrate, the Exhibit at ECF 14-1 consists of 228 pages.

September 15, 2015, and October 27, 2015, the Clerk of Court informed Haley that Defendants had filed dispositive motions; that Haley had seventeen days in which to file written oppositions to the motions; and that if Haley failed to respond, the claim against Defendants could be dismissed without further notice. ECF Nos. 15 & 19. Haley has not filed opposition responses.

The matter is ready for disposition; no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For reasons that follow, Defendants' Motions (ECF Nos. 13 & 18), construed as motions for summary judgment, ARE GRANTED.[4]

## I. Background

Haley's self-represented Complaint alleges that in 2010 he was verbally threatened by Kiefer, who threatened to kill him and called him several racist names. He states that as a result "I feared for my safety and life which caused me to attack [Kiefer] first." ECF No. 1 at p. 2. Haley claims that during this incident he was chemically maced in the face by Puffenberger and called several racist and demeaning names while restrained. *Id.* Haley further asserts that on July 25, 2011, Correctional Officer Rounds came to his door, threatened to kill him, and called him racist names as a result of the altercation Haley had with Kiefer. He claims that as a result, he assaulted Rounds. *Id.* at p. 3. On June 12, 2015, the Court dismissed all of Haley's allegations occurring prior to May 5, 2012, as barred by the statute of limitations. ECF No. 5.

Haley maintains that Puffenberger has directly interfered with his medical treatment by telling Dr. Ottey that "I am an idiot" and that "I need to suffer because I assaulted staff members." Haley complains that he has (1) a rare disease causing him to regurgitate substantial amounts of his food and liquid, for which he was receiving the liquid supplement "Boost," (2)

---

[4]    Dr. Ottey moves to seal relevant medical records attached to and supportive of his dispositive motion. ECF No. 14. The Motion shall be granted and the Clerk shall place all documents found in the exhibit at ECF No. 14-1 under seal.

experienced "excruciating pain in both of his surgically-repaired heels," and (3) the Elavil medication prescribed by Ottey for his discomfort is used for those who suffer from seizures and does not relieve his pain. ECF No. 1 at pp. 4-5.

Haley claims that Puffenberger has conspired with Wilt and the Housing Unit Shift Manager to allow Kiefer and Rounds to work his tier. He alleges that Kiefer continues to harass him by calling him racist names and threatening to spit in his food in retaliation for the two guard assaults. *Id.* at p. 4. Haley seemingly maintains that his attempts to enter the NBCI Behavioral Management Program ("BMP") to reduce his segregation time and to enter general population have been made difficult over the past six and one-half years because Wilt and Puffenberger both sit on the BMP Committee which directly recommends an inmate's entry into the program. *Id.* at pp. 5 & 6. Haley alleges that both Wilt and Puffenberger make his "life a living nightmare" because of Haley's assaults on the two officers. *Id.* at p. 6.

### I. Standard of Review

Defendants' Motions are styled as Motions to Dismiss under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for Summary Judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167. The Court is more than satisfied that given the volume of exhibits presented here, it has ample information with which to address the motions as filed for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

---

[5]     In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to...the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). But, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

In the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.  Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact.  *See Anderson*, 477 U.S. at 247-48.  If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment.  *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law."  *Id.* at 252.  And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*.

Because Haley is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

With regard to the medical claims raised against Ottey, and to a lesser extent against Puffenberger, the Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seater*, 501 U.S. 294, 297 (1991).  In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to his serious medical

6

needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Kio v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.[6] *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicted...becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown*, 240 F. 3d at 390; citing *Liege v.*

_____

[6]     A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241, citing to *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999).

*Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LaFevers*, 423 F. Supp. 2d 1064, 1070-71 (C.D. Cal. 2006).

Further, § 1983 medical liability on the part of Puffenberger requires a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990) (internal citations omitted).

An inmate's claims that he was subject to threats, retaliation, and harassment are not actionable if they have been raised in a conclusory manner or are not colorable under § 1983. *See American Civ. Liberties Union v. Wicomico County*, 999 F. 2d 780, 784-86 (4th Cir. 1993). The inmate alleging retaliation "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial motivating fact in the prison officials' decision to discipline the plaintiff." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *see also Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). In any

event, mere verbal threats are not actionable under § 1983.  *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 n. 11 (10th Cir. 1998); *accord Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.")

Ottey's unopposed materials indicate that Haley is a forty-eight year old man with a medical history of esophageal stricture[7] for which he is seen in the Chronic Care Clinic ("CCC"). ECF No. 13-4 at Ottey Aff.  The record further shows that Haley has a history of bilateral heel surgery from injuries sustained in 2004 when he jumped from the top tier of his housing unit.  *Id.* Ottey maintains that Haley has a long history of non-compliance with his medication as he has refused the administration of medications prescribed to him for his various physical and mental health conditions on more than fifty separate occasions and refused to be seen by medical personnel on at least fifteen separate occasions.  ECF No. 14-1 at pp. 1, 13-16, 52, 67, 76, 82, 86-87, 101-130, 132-161, 163-204, 206-208, 211-213, 215-217, 220-222, 224, & 226-228.  Haley further refused to have his blood drawn for laboratory testing and to be seen for a periodic physical examination.  *Id.* at pp. 4, 28, 47, 131, 162, 205, 209-210, & 218-219.

Ottey affirms that Haley is seen regularly in the CCC for his esophageal stricture, is provided a high calorie diet and Prilosec OTC to assist with his acid reflux, and has been referred to a gastroenterologist for a possible upper endoscopy[8] with dilation.  *Id.* at pp. 96-97.  Haley

---

[7]     An esophageal stricture is the medical term for the narrowing of the esophagus (the tube from the mouth to the stomach).  It causes swallowing difficulties. *See* https://www.nlm.nih.gov/medlineplus/ency/article/000207.htm.

[8]     An upper endoscopy is a procedure used to visually examine the upper digestive system with a tiny camera on the end of a long, flexible tube.  A specialist in diseases of the digestive system (gastroenterologist) uses an endoscopy to diagnose and, sometimes, treat conditions that affect the

was placed on the nutritional dietary supplement Ensure by Dr. Ava Joubert on October 25, 2013, after not eating due to a self-imposed hunger strike. *Id.* at pp. 38-41. On October 26, 2013, Haley informed Ottey that he had been eating for three days, was not experiencing any nausea or vomiting, and was tolerating his meals. *Id.* at pp. 50-51. Haley further denied any weight loss. *Id.* The record indicates that Haley's documented weight has been between 142 and 149 pounds, with the exception of a short time period the last week of October of 2013, when he was on a hunger strike. ECF No. 14-1 at pp. 11, 21, 26, 32, 38-43, 54, 60-61, 68, 70, 78, & 80. On June 10, 2015, however, Dr. Mahboob Ashraf placed Haley on Boost, a liquid nutritional dietary beverage, out of concerns that Haley's energy levels were low. *Id.* at pp. 90-93.

Haley received reconstructive surgery on both of his heels requiring the use of surgical screws and plates. Ottey saw Haley in the CCC on November 11, 2012, for complaints regarding both esophageal stricture and heel pain. When seen by Ottey, Haley denied nausea, vomiting, dysphagia (difficulty swallowing), or abdominal pain and indicated that he had no tingling or numbness to his heels, but had pain upon ambulation. Ottey prescribed acetaminophen (a pain reliever) and ordered x-rays of Haley's feet. *Id.* at pp. 10-12. The x-rays revealed metallic hardware and evidence of an old fracture, but no new fractures. *Id.* at p. 9.

Ottey next saw Haley in the CCC on February 16, 2013, for complaints regarding heel pain/numbness and regurgitation related to his esophageal stricture. Haley's examination was unremarkable with the exception of tenderness in the right foot. He was continued on his Prilosec OTC and Amitriptyline.[9]  *Id.* at pp. 20-21. On August 9, 2013, Haley was seen by Ottey in the CCC for his gastroesophageal reflux disease ("GERD"). *Id.* at pp. 29-30.

---

esophagus, stomach and beginning of the small intestine (duodenum). See http://www.mayoclinic.org/tests-procedures/endoscopy/basics/definition/prc-20020363.

[9]     Amitriptyline or Elavil is primarily used for relief of symptoms of depression.

On October 23, 2013, Haley was seen by Ottey due to his hunger strike. *Id.* at pp. 32-33.
Three days later he was seen by Ottey related to his hunger strike and foot pain. He reported
injuring his left knee and ankle during a recent altercation with correctional officers in which
pepper spray was applied to Haley. *Id.* at pp. 49-52. Ottey observed swelling and pain in
Haley's left ankle and prescribed Tylenol #3 for two weeks and ordered x-rays of Haley's knee
and ankle. *Id.* The x-rays were unremarkable. ECF No. 14-1 at pp. 37 & 48. On October 31,
2013, Haley was seen by Ottey in the CCC for complaints related to GERD. He made no
complaints regarding heel pain. *Id.* at pp. 54-55.

Haley did not see Ottey until August 3, 2014, when he was evaluated in the CCC for
GERD and right foot pain. Haley reported difficulty swallowing solids and liquids and increased
foot pain on ambulation. Ottey renewed Haley's Acetaminophen prescription and ordered x-rays
of his right foot. *Id.* at pp. 68-69. The x-rays showed an old injury with post-treatment stable-
appearing metallic hardware. *Id.* at p. 100. On November 2, 2014, Haley was seen in the CCC
for esophageal concerns. He had issues with regurgitation, but had no concerns about his weight.
*Id.* at pp. 70-71. Ottey renewed Haley's Acetaminophen prescription. *Id.* Haley has not been
evaluated by Ottey since that date, but continues to be seen for his esophageal stricture and foot
pain by other NBCI medical staff. ECF No. 13-2 at Ottey Aff; ECF No. 14-1 at pp. 77-85, 88-
90, & 99.

Ottey affirms that Haley will always have some level of pain in his feet and although he
regularly complains of heel pain, on evaluation his feet showed no signs of infection, swelling, or
edema and x-rays showed no evidence of acute fracture, subluxation or discoloration. ECF No.

---

Amitriptyline is also used to treat eating disorders, post-herpetic neuralgia (the burning, stabbing pains, or
aches that may last for months or years after a shingles infection), and to prevent migraine headaches.
*See* https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682388.html#why.

14-1 at pp. 2, 11, 21, 22-27, 29-30, 32-33, 54-59, 62-64, 70-74, 77-81, 83-85, & 88-91. Ottey maintains that Haley's esophageal stricture may be self-managed and does not require daily servings of Boost and Ensure. He affirms that his medical treatment of Haley was in no way affected by correctional staff, was medically appropriate, and within applicable standards of care. ECF No. 13-2 at Ottey Aff.

State Defendants Kiefer, Puffenberger, and Wilt ("State Defendants") maintain that Haley is currently assigned to NBCI disciplinary segregation in Housing Unit 1, which is designated for segregation inmates. ECF No. 18-2 at Durst Decl. According to their exhibits Haley has a "long list of infractions" lengthening the time he is required to serve on disciplinary segregation. In 2011, Haley slipped out of his hand restraints and punched Kiefer. He was subdued with the assistance of Puffenberger, who applied a burst of pepper spray to gain control over Haley. ECF No. 18-3 at Puffenberger Decl. Puffenberger affirms that she has no role in assigning officers to work the tiers in Housing Unit I. *Id.* Kiefer affirms that although he may work in Housing Unit 1 from time to time, he has not used racial epithets against Haley nor threatened to spit on him. ECF No. 18-4 at Kiefer Decl. The State Defendants argue that Haley's behavior and time on segregation restricts his ability to participate in the BMP.[10] They maintain that admission into the BMP is determined by committee, consisting of an inmate's case management staff, not correctional officers. They state that Haley is familiar with the admission process. Haley last applied to the BMP in 2010, the Committee denied him admission due to his lack of readiness, and has not reapplied. ECF No. 18-2 at Durst Decl.

---

[10]      The State Defendants maintain that the BMP is a twelve-month cognitive behavioral program, designed to teach inmates how to improve their behavior. The program involves NBCI's Intelligence and Psychology Departments, Case Management, social workers, and the correctional staff, typically the manager of Housing Unit 1. ECF No. 18-2 at Durst Decl.

The State Defendants assert that medical treatment for inmates is administered by private health care professionals contracted by the State.  They argue that they have no say in prescribing medical treatment or making decisions regarding health care.  Puffenberger maintains that she has not sought to influence the prescribed treatment received by Haley, including his receipt of liquid dietary supplements. ECF No. 18-3, at Puffenberger Decl.  They note, as did Dr. Ottey, that Haley was placed on the nutritional drink Ensure in October of 2013 after he reported going on a hunger strike. ECF No. 18-5.

The record shows that Haley has filed numerous administrative remedy procedure grievances, but has not filed any ARPs involving either Puffenberger or Wilt.  Further, there are no grievances filed by Haley relating to admission to the BMP or interference with a medically recommended diet. ECF No. 18-2 at Durst Decl.

### IV. Analysis

The State Defendants raise several affirmative defenses: the failure to exhaust available administrative remedies, statute of limitations, and qualified immunity.  The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release,

or diversionary program." 42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase v. Peay*, 286 F.Supp.2d 523, 530 (D. Md. 2003), *aff'd* 98 Fed. Appx. 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Courts have no discretion to dispense of the exhaustion requirement in lawsuits where the PLRA applies, and a case must be dismissed where it is apparent that an inmate failed to

14

properly exhaust available administrative remedies before filing suit. *See Woodford v. Neo*, 548 U.S. 81, 89 (2006). The Supreme Court has noted that if an inmate could properly exhaust his claims without complying with the procedural rules of the prison's grievance system, a prisoner could avoid the entire prisoner grievance process by simply filing a prison grievance he knows would be dismissed for procedural deficiency. *Id.* at 96. To prevent this type of abuse, the Fourth Circuit has held that an inmate must follow the required procedural steps in order to exhaust his administrative remedies, and return of an improperly filed grievance specifically does not serve to exhaust a prisoner's administrative remedies. *Moore v. Bennette,* 517 F.3d 717, 725, 729 (4th Cir. 2008); *see also Langford v. Couch,* 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory.").

Administrative remedies must, however, be available to the inmate and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Fourth Circuit has addressed the meaning of "available" remedies in *Moore,* 517 F. 3d at 725:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*See also Blake v. Ross*, 987 F.3d 693, 698-701 (4th Cir. 2015), *cert. granted, Ross v. Blake*, 136

S. Ct. 614 (2015) (review of whether there is a common law "special circumstances" exception to the PLRA that relieves an inmate of his mandatory obligation to exhaust administrative remedies when the inmate erroneously believes that he satisfied exhaustion by participating in an internal investigation).

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the ARP process. *See* COMAR 12.07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR 12.07.01.05C; *Blake v. Ross*, 787 F.3d at 697. If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO"). *See* C.S. §§ 10-206, 10-210; COMAR 12 07.01.03; COMAR 12.07.01.05B. Complaints are reviewed preliminarily by the IGO. *See* C.S. § 10-207; COMAR 12.07.01.06A. If the complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.J. § 10-208(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must

make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)-(c).

Haley has failed to exhaust his administrative remedies prior to filing his lawsuit in this Court, and this Court must dismiss his lawsuit with prejudice. The State Defendants have submitted unrefuted evidence which establishes that Haley failed to exhaust his administrative remedies by filing ARPs regarding Puffenberger or Wilt. Moreover, he does not dispute the fact that he filed no grievances regarding his admission to the BMP or correctional staff interference with his medical care. Haley offers no opposition materials demonstrating that he did in fact attempt to exhaust his remedies or was otherwise estopped from filing a grievance. Due to this failure, Haley's claims against the State Defendants must be dismissed as they are barred by the PLRA from litigation in this Court.[11]

Even if Haley had properly exhausted his administrative remedies, summary judgment in favor of the State Defendants would be appropriate because the pleadings, declarations, and exhibits on file demonstrate that they did not violate Haley's constitutional rights. The undisputed record shows that neither Puffenberger nor others interfered with Haley's medical care, harassed him, or retaliated against him by denying him the opportunity to participate in the BMP.

Haley's medical claims against Dr. Ottey are likewise subject to dismissal. The unopposed record presented establishes that medical providers did not refuse to provide him care for his surgically repaired heels or for his esophageal stricture. The conditions are routinely

---

[11]     The State Defendants further argue that Haley's claims against them are subject to qualified immunity and his BMP claims are barred by the applicable three-year statute of limitations as he was denied admission to the BMP in 2010 and has not reapplied for admission to the program. In light of the foregoing rulings, the Court declines to address these arguments.

assessed in the CCC and Haley has received pain medication, supplemental nutritional liquids, and x-rays. Haley has been repeatedly examined and treated by nurses, PAs, and doctors. The record evidence indicates that Haley's requests are considered, his needs are addressed, and he is encouraged by medical staff to keep them informed of any further episodes or serious symptoms. Further, there is no showing that Puffenberger interfered with Haley's medical care. *See Shaw*, 13 F.3d at 799; *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990).

A constitution violation cannot be made given the facts of this case. Summary judgment will be entered in favor of all Defendants in a separate Order to follow. The Complaint against "Officer R. Rounds" shall be dismissed.

Date: ___2/4/16___

_____
William M. Nickerson
Senior United States District Judge

18